The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
June 28, 2018

**2018COA93**

**No. 17CA1936, *City of Boulder v. ICAO* — Labor and Industry — Workers' Compensation — Coverage for Occupational Diseases Contracted by Firefighters**

A division of the court of appeals considers whether a firefighter's cancer risks must be ranked in a workers' compensation case, and if so, whether the highest risk must be considered the cause of a firefighter's cancer, to the exclusion of all other causes. The division concludes that a trio of Colorado Supreme Court cases — *City of Littleton v. Industrial Claim Appeals Office*, 2016 CO 25; *Industrial Claim Appeals Office v. Town of Castle Rock*, 2016 CO 26; and *City of Englewood v. Harrell*, 2016 CO 27 — do not require administrative law judges to rank risk factors in the course of determining whether employers have

rebutted the statutory presumption found in section 8-41-209, C.R.S. 2017.

The division also concludes that there was substantial evidence to support the judge's factual findings that the employer had not overcome the presumption of compensability.

COLORADO COURT OF APPEALS     **2018COA93**

_____

Court of Appeals No. 17CA1936
Industrial Claim Appeals Office of the State of Colorado
WC No. 4-990-597

_____

City of Boulder Fire Department and CCMSI,

Petitioners,

v.

Industrial Claim Appeals Office of the State of Colorado and Dean Pacello,

Respondents.

_____

ORDER AFFIRMED

Division I
Opinion by JUDGE BERNARD
Taubman and Welling, JJ., concur

Announced June 28, 2018

_____

Dworkin, Chambers, Williams, York, Benson, & Evans, P.C., David J. Dworkin, Denver, Colorado, for Petitioners

No Appearance for Respondent Industrial Claim Appeals Office

Law Office of O'Toole and Sbarbaro, P.C., Neil D. O'Toole, Denver, Colorado, for Respondent Dean Pacello

¶ 1     Must a firefighter's cancer risks be ranked in a workers' compensation case, and, if so, must the highest risk be considered the cause of the firefighter's cancer, to the exclusion of other causes? We answer these questions in the context of a challenge to the final order of a panel of the Industrial Claim Appeals Office of Colorado that affirmed the decision of an administrative law judge. The challengers are an employer, the City of Boulder Fire Department, and its insurer, Cannon Cochran Management Service, Inc., or CCMSI, which we shall refer to both as "the City." The judge found that the City had not overcome the statutory presumption that the squamous cell carcinoma in firefighter Dean Pacello's tongue was compensable.

¶ 2     The City contends that the judge should have ranked the possible causes of the firefighter's cancer to identify the highest risk factor. When the judge did not do so, the City continues, he did not follow a trio of Colorado Supreme Court opinions that had interpreted section 8-41-209, C.R.S. 2017, which we will shorten to "section 209," and its statutory presumption. We disagree because we conclude that (1) the trio of cases does not require the judge to rank the causes of the firefighter's cancer; (2) the sufficiency of the

1

evidence that the City needed to overcome section 209's presumption of compensability was a question for the judge to decide; and (3) substantial evidence supported the judge's factual findings. We therefore affirm the panel's decision.

## I. Background and Procedural History

¶ 3    The firefighter worked for the City's fire department for thirty-five years. He retired in 2013. In July 2015, a doctor discovered that the firefighter had squamous cell carcinoma in his tongue. He filed a claim for workers' compensation benefits under section 209.

¶ 4    The legislature enacted section 209 in 2007. Ch. 245, sec. 1, § 8-41-209, 2007 Colo. Sess. Laws 962-63. Subsections (1) and (2)(a) of section 209 create a presumption that brain, skin, digestive, hematological, or genitourinary cancers are compensable if stricken firefighters meet certain criteria. But the legislature did not impose strict liability for these cancers on fire departments or cities. Instead, under section 209(2)(b), an employer, such as the City, may overcome the presumption by showing that a firefighter's cancer "did not occur on the job."

¶ 5    The City challenged the firefighter's workers' compensation claim. It maintained that the human papillomavirus 16/18, which

is a sexually transmitted virus known to cause cancer of the tongue in some men, was the more likely cause of his cancer. (A biopsy determined that the mass at the base of the firefighter's tongue was positive for the virus.)

¶ 6 To overcome the statutory presumption of compensability, the City retained a medical expert, Dr. Richard Bell, who specialized in cancers of the head and neck. Dr. Bell testified that, because the firefighter's tumor tested positive for the virus, "and the association between [the virus] and [cancer caused by the virus] and cigarette smoking is . . . weak," the firefighter's tongue cancer "was not related to his occupation . . . ." Dr. Bell added that the "preponderance of the evidence would suggest that [the firefighter's cancer] [had been] caused by a virus that was sexually transmitted that was not related to occupational smoke exposure."

¶ 7 Dr. Alexander Jacobs, an internal medicine specialist, echoed Dr. Bell's opinion. Dr. Jacobs observed that

> [t]his is one of the few instances where we actually have a known etiologic factor that causes cancer. In women, this is in the form of cervical cancer and in both men and women in the form of oral/pharyngeal cancer.

> In conclusion, [the firefighter] does have metastatic squamous cell carcinoma of the tongue and oral pharynx. Surgical pathology was positive for [the virus]. In my opinion, tobacco usage and even alcohol usage may have added a predisposition to this condition. However, the cause is clearly the . . . virus.

¶ 8 In response, the firefighter offered testimony from Dr. Annyce Mayer, an occupational medicine expert, to refute the opinions of Drs. Bell and Jacobs. Dr. Mayer testified that, in her opinion, the firefighter's cancer was caused by a "combination of [the virus] and the carcinogens to which he was exposed . . . that significantly elevated his risk of developing the cancer." She added that "we do know that the risk is significantly increased with the combination of the two." She cited a 1998 study in support of her opinion. It found a "1.7-fold increased risk" of contracting cancer from the virus alone; a "3.2-fold increased risk" from smoking alone; but "a synergistically-increased risk of 8.5-fold in those with both [the virus] and smoking." She thought that, although the 1998 study examined cigarette smoking rather than exposure to smoke while fighting fires, it was nonetheless relevant because "cigarette smoking and carcinogen exposures in fire, soot, and smoke have some carcinogens in common."

¶ 9    The firefighter's treating doctor, Dr. Sander Orent, corroborated Dr. Mayer's opinions.  He described the firefighter's cancer as a "multifactorial disease" that was

> a result of not just the exposure to carcinogens or the presence of [the virus].  It is a product of the fact that the necessary soil for cancer is the [virus] and the carcinogen.  Something has to make the seed grow.  The [virus] is sitting there doing nothing until the carcinogen comes along and suppresses the immune system to the point where the malignancy develops.
>
> We know that there are multiple causes of immunosuppression in firefighters.
>
> [The firefighter] has been exposed to uncounted amounts of toxins in the course and scope of his job. . . .  [T]he preponderance of the evidence, in my view, is overwhelming that his exposures to carcinogens in the course and scope of his work are far more important than any other factor in activating that [virus] that was there.

He added that the firefighter had been "absolutely" exposed to the triggering carcinogens "on the job."

¶ 10    Dr. Bell, who the reader will recall was one of the City's experts, rejected Dr. Orent's assessment.  Dr. Bell observed that "there's simply no data, whatsoever, specifically with regard to [the virus] and occupational smoke exposure."  Because the majority of

virus-related cancers occur in nonsmokers, Dr. Bell disagreed that smoking is a necessary catalyst for the disease's development. He instead concluded that "[i]t's not necessary to have a significant smoking history to . . . develop [virus]-related head and neck cancer." He reiterated that, without the virus, the firefighter "would not have had this particular [virus]-related cancer." But he conceded that he could not dispute "the fact that smoking may or may not increase the risk of developing [the viral] infection and [virus]-related cancer." He did not know "anything about firefighting."

¶ 11    Based on this evidence, the judge decided that the firefighter's cancer was compensable and awarded him benefits. The judge thought that Dr. Mayer's testimony that it had been "the combination of [the virus] and [the firefighter's] exposure to known carcinogens that [had] cause[d him] to contract cancer" was more persuasive than the contrary testimony of Drs. Bell and Jacobs.

¶ 12    The judge agreed that the firefighter's cancer was "related to the . . . virus." But he observed that "what is less clear, is the relationship between [the firefighter's] exposure to carcinogens at work and the development of the cancer in question." Given this

uncertainty, the judge concluded that the City had failed to show "that it [was] more likely than not that [the firefighter's] employment did not cause [his] particular cancer."

¶ 13    The panel affirmed. It held that it would not substitute its judgment for the judge's. It also determined that it was bound by the judge's findings and conclusions because substantial evidence supported them.

¶ 14    The panel rejected the City's argument that, by adopting Dr. Mayer's and Dr. Orent's "multifactorial" or "combination" theory of risk factors causing cancer, the judge had misapprehended the trio of supreme court cases. (The panel noted that nothing in section 209 or in the trio of supreme court cases required an administrative law judge to reject a multifactorial cancer cause.) By doing so, the City continued, the judge had made it impossible for any employer to overcome the section 209 presumption because most cancers are not caused by a single carcinogen or exposure.

## II. The City's Contentions

¶ 15    The City contends that it proved that it was more likely that the virus had caused the firefighter's cancer than other, more attenuated, risks. As a result, it carried its burden "by more than a

preponderance of the evidence." It submits that, by accepting the "multifactorial" or "combination" of causes advanced by Drs. Mayer and Orent, the judge misinterpreted the trio of supreme court cases that had analyzed section 209:

- *City of Littleton v. Industrial Claim Appeals Office*, 2016 CO 25;

- *Industrial Claim Appeals Office v. Town of Castle Rock*, 2016 CO 26; and

- *City of Englewood v. Harrell*, 2016 CO 27.

¶ 16    According to the City, the trio of cases "requires" administrative law judges to "weigh and rank the risk factors to determine whether the employer showed by a preponderance of the evidence that a nonoccupational risk factor was the greater or higher risk factor in the firefighter's cancer." The judge and the panel therefore committed reversible error, the City continues, when they rested their determination that the firefighter's cancer was compensable on a finding that the cause of the firefighter's cancer was "multifactorial." The City adds that, by crediting a multifactorial cause for cancer, the panel and the judge effectively rendered the section 209 presumption irrebuttable because most, if

not all, cancers have multiple causal risk factors.  We disagree with all the City's contentions.

## III.  Section 209

¶ 17    Section 209 states:

> (1) Death, disability, or impairment of health of a firefighter of any political subdivision who has completed five or more years of employment as a firefighter, caused by cancer of the brain, skin, digestive system, hematological system, or genitourinary system and resulting from his or her employment as a firefighter, shall be considered an occupational disease.
>
> (2) Any condition or impairment of health described in subsection (1) of this section:
>
> (a) Shall be presumed to result from a firefighter's employment if, at the time of becoming a firefighter or thereafter, the firefighter underwent a physical examination that failed to reveal substantial evidence of such condition or impairment of health that preexisted his or her employment as a firefighter; and
>
> (b) Shall not be deemed to result from the firefighter's employment if the firefighter's employer or insurer shows by a preponderance of the medical evidence that such condition or impairment did not occur on the job.

The City concedes that the firefighter's cancer was subject to the section 209 presumption.

9

## IV. Governing Law

¶ 18     In 2016, the Colorado Supreme Court weighed in on the burden that section 209 places on employers to overcome the presumption.

> [W]e conclude that an employer can meet its burden under section [209] to show that a firefighter's condition or impairment "did not occur on the job" by establishing, by a preponderance of the medical evidence, either: (1) that a firefighter's known or typical occupational exposures are not capable of causing the type of cancer at issue; or (2) that the firefighter's employment did not cause the firefighter's particular cancer where, for example, the claimant firefighter was not exposed to the substance or substances that are known to cause the firefighter's condition or impairment, *or the medical evidence renders it more probable that the cause of the claimant's condition or impairment was not job-related.*

*City of Littleton*, ¶ 49 (emphasis added).

¶ 19     In *Town of Castle Rock*, the supreme court further explained that an employer can meet its burden of overcoming the statutory presumption by introducing "risk factor" evidence showing that a firefighter's cancer more likely arose from a nonoccupational cause. The court added that

> an employer can seek to meet its burden under section [209] to show a firefighter's cancer "did

10

not occur on the job" by presenting particularized risk-factor evidence indicating that it is more probable that the claimant firefighter's cancer arose from some source other than the firefighter's employment. To meet its burden of proof, the employer is not required to prove a specific alternate cause of the firefighter's cancer. Rather, the employer need only establish, by a preponderance of the medical evidence, that the firefighter's employment did not cause the firefighter's cancer because the firefighter's particular risk factors render it more probable that the firefighter's cancer arose from a source outside the workplace.

*Town of Castle Rock*, ¶ 17.

¶ 20    But such evidence is not dispositive. Whether an employer has met this burden remains a question of fact for an administrative law judge to decide. Because the judge is the "sole arbiter of conflicting medical evidence . . . [the judge's] . . . factual findings are binding on appeal if they are supported by substantial evidence or plausible inferences from the record." *City of Littleton*, ¶ 51.

¶ 21    *Harrell* returned a case to an administrative law judge "for reconsideration in light of . . . *City of Littleton* and *Town of Castle Rock*." *Harrell*, ¶ 4.

## V. Ranking the Risk Factors

¶ 22    The City's contention rests on the premise that the virus was the primary cause of the firefighter's cancer and that any other causes or risk factors were remote in comparison. The City maintains that, if the judge had properly applied the standards set out in *City of Littleton* and *Town of Castle Rock,* he would have concluded that it had overcome the section 209 presumption because the virus's role in causing the firefighter's cancer outweighed any other risks. It urges us to eschew "multifactorial" risks or "combination" causes in favor of a declaration that administrative law judges must find the one cause or risk that outweighs all the others. But, because *City of Littleton* and *Town of Castle Rock* cede discretion to administrative law judges to weigh the potential causes and risks, we disagree that the section 209 presumption is automatically overcome simply by identifying a significant nonoccupational cancer cause.

### A. The Judge Did Not Misapply the Law

¶ 23    Despite the City's insistence that the supreme court has mandated administrative law judges to rank firefighters' cancer risks, the trio of supreme court cases does not express such a

mandate. And the trio does not preclude consideration of multifactorial causes of cancer. The City has not pointed us to any language in *City of Littleton*, *Town of Castle Rock*, or *Harrell* that requires administrative law judges to rank risks or causes, and we have not found any in our reading of those cases.

¶ 24 Rather, each case emphasized that an employer "*can*" meet its burden of overcoming the presumption by establishing the prevalence of non-work-related risk factors. *See City of Littleton*, ¶ 49; *Town of Castle Rock*, ¶ 17; *Harrell*, ¶ 2. But the trio of cases does not say that an employer *will* meet its burden by establishing a nonoccupational risk; the trio does not assure employers that they will overcome the section 209 presumption by showing that nonoccupational risk factors played a prominent role in the cancer's development; and the trio does not state that, once employers introduce such evidence, they will automatically rebut the section 209 presumption as a matter of law. In other words, the supreme court opened an avenue for employers to follow, but the court did not guarantee them that the avenue would automatically take them to their desired destination of rebutting the section 209 presumption.

¶ 25    The City's advocacy for a requirement that administrative law judges rank risks or causes ignores a critical standard that the trio of cases announced: the determination of whether an employer has met its burden remains within the fact finder's discretion.  Indeed, *City of Littleton* reversed a division of this court because the division "erroneously failed to defer to the [administrative law judge's] findings of fact, which are supported by substantial evidence in the record."  *City of Littleton*, ¶ 64.  *Town of Castle Rock* did not simply set aside an order that had not considered risk-based evidence, and it did not hold that the risk-based evidence that the employer had offered had overcome the presumption.  Instead, the supreme court *remanded* the case so that the administrative law judge could give the evidence due consideration.  *Town of Castle Rock*, ¶ 27.

¶ 26    To hold — as the City urges — that administrative law judges *must* rank a firefighter's various cancer risks would create the following rule: an employer overcomes the presumption whenever it presents evidence that *any* nonoccupational cause outweighs the cancer risks posed by firefighting.  Such a rule would erect a nearly insurmountable barrier that a cancer-stricken firefighter could only vault by establishing that firefighting exposures outweighed all

other potential cancer risks. By doing so, the rule would undercut what the legislature wanted to do by creating the section 209 presumption in the first place. In other words, the City's interpretation would tip the scale too far in favor of employers.

¶ 27 Such a rule would also contravene the supreme court's mandate that we "defer to the [administrative law judge's] findings of fact" when those findings "are supported by substantial evidence in the record." *City of Littleton*, ¶ 64. Accepting the City's proposed rule would therefore deprive administrative law judges of the discretion that the supreme court has described, which allows them to consider and to weigh the evidence offered by both sides. Accordingly, we conclude that *City of Littleton*, *Town of Castle Rock*, and *Harrell* did not require the judge to rank the firefighter's various occupational and nonoccupational cancer risks.

B. Substantial Evidence Supported the Judge's Findings

¶ 28 To be sure, the judge could have weighed the evidence in the City's favor; but, contrary to the City's position, the evidence did not mandate an outcome in its favor. Drs. Mayer and Orent testified that the firefighter's cancer likely had "multifactorial" causes and a

combination of risk factors, amply supporting the judge's finding of compensability.

¶ 29 The supreme court gave the judge the authority to determine whether the City had overcome the section 209 presumption. *City of Littleton*, ¶ 51. We are therefore bound by the judge's factual findings if they are supported by substantial evidence in the record. *Id.* at ¶¶ 51-52. We conclude, for the following reasons, that they are.

¶ 30 To begin, once the judge admitted the doctors' testimony and the rest of the evidence, it was up to him to decide what weight to give all of the evidence. *Id.*

¶ 31 Dr. Orent discussed the role fighting fires likely played in "activating" the firefighter's cancer-causing virus. Dr. Orent described it as "the trigger that allowed" the virus to become cancerous. He emphasized that the firefighter's lack of other risk factors for tongue cancer — he was a nonsmoker; he had not abused marijuana or drugs; he had been monogamous — meant that the "preponderance of his exposure virtually had to be fire."

¶ 32 Dr. Mayer corroborated Dr. Orent's view when she testified "that it was the combination of [the virus] and the carcinogens . . .

16

that significantly elevated his risk of developing cancer." She backed up her opinion with a study that found "a synergistically-increased risk of 8.5-fold in those with both [the virus] and smoking."

¶ 33 Although the City's medical expert, Dr. Bell, thought that the virus, and not any carcinogens to which the firefighter had been exposed on the job, had caused his cancer, Dr. Bell did not entirely dispute Dr. Mayer's synergistic theory. Instead, he called it a "grayer area," and he noted that "older data" existed that suggested "there may be an association" between the virus and firefighting exposures.

¶ 34 This evidence sufficiently supports the judge's finding and conclusion that the City had failed to show that it was "more likely than not that [the firefighter's] employment [had] not cause[d] [his] particular cancer." We, like the panel, are therefore bound by the judge's decision. *City of Littleton*, ¶¶ 51-52.

¶ 35 In reaching his decision, the judge found that Dr. Mayer's opinions were more persuasive than those of the City's medical experts. "We must . . . defer to the [administrative law judge's] credibility determinations and resolution of conflicts in the

evidence, including the medical evidence." *City of Loveland Police Dep't v. Indus. Claim Appeals Office*, 141 P.3d 943, 950 (Colo. App. 2006). As in all workers' compensation cases, the weight to be given the experts' testimony "is a matter exclusively within the discretion of the [administrative law judge] as fact-finder." *Rockwell Int'l v. Turnbull*, 802 P.2d 1182, 1183 (Colo. App. 1990). "Further, we may not interfere with the [administrative law judge's] credibility determinations except in the extreme circumstance where the evidence credited is so overwhelmingly rebutted by hard, certain evidence that the [administrative law judge] would err as a matter of law in crediting it." *Arenas v. Indus. Claim Appeals Office*, 8 P.3d 558, 561 (Colo. App. 2000).

¶ 36    We conclude that the judge acted well within his discretion by crediting Dr. Mayer's opinions over the contrary opinions of Drs. Bell and Jacobs. *Rockwell Int'l*, 802 P.2d at 1183. In the absence of overwhelming evidence rebutting Dr. Mayer's and Dr. Orent's opinions, we may not disturb the judge's determination that Drs. Mayer and Orent were more credible and more persuasive than Drs. Bell and Jacobs. *See Youngs v. Indus. Claim Appeals Office*, 2012

COA 85M, ¶ 46; *Arenas*, 8 P.3d at 561; *Rockwell Int'l*, 802 P.2d at 1183.

¶ 37　We last conclude that, because substantial evidence supported the judge's factual finding that fighting fires played a causal role in the firefighter's cancer, the panel did not err when it affirmed the judge's decision.　*See City of Littleton*, ¶¶ 51-52.

¶ 38　The order is affirmed.

JUDGE TAUBMAN and JUDGE WELLING concur.