23CA1846 State Board of Social Work v Tacha 10-24-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1846
Colorado State Board of Social Work Examiners
Case No. 2017-5442

---

Colorado State Board of Social Work Examiners,

Petitioner-Appellee,

v.

Lucinda Tacha, License No. CSW 00992478,

Respondent-Appellant.

---

ORDER AFFIRMED

Division IV
Opinion by JUDGE YUN
Harris and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 24, 2024

---

Philip J. Weiser, Attorney General, Brianna S. Tancher, Assistant Attorney General, Denver, Colorado, for Petitioner-Appellee

Robert A. Lees & Associates, Robert A. Lees, Greenwood Village, Colorado, for Respondent-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1 In this administrative agency disciplinary action, Lucinda Tacha appeals the final order of Colorado State Board of Social Work Examiners (the Board) revoking her clinical social worker license. The primary questions before us are whether the record supports the finding of an administrative law judge (ALJ) that Tacha "complete[d] . . . forms in her own hand" in order to become the beneficiary of a client's annuity contract and, if so, whether that finding justifies the revocation of her license under the Mental Health Provider Act. Because we answer these questions in the affirmative, we affirm the order.

## I. Background

¶ 2 Tacha is a clinical social worker who provided therapy to J.M. for seven years. In 2016, while still an active patient of Tacha's, J.M. purchased an annuity contract for which he designated Tacha as the primary beneficiary. After J.M. passed away in 2017, his daughter discovered J.M.'s annuity contract and several bank accounts in which Tacha was listed as the beneficiary. As a result, the daughter filed a complaint with the Board, alleging that Tacha used her position as J.M.'s therapist to secure a financial benefit.

1

¶ 3    In 2018, Tacha and J.M.'s daughter entered into a settlement agreement in the probate case.  As part of this agreement, J.M.'s daughter agreed to withdraw her complaint against Tacha, and the daughter submitted a letter to the Board requesting as much.

¶ 4    Nevertheless, the Board filed a notice of charges against Tacha in 2022.  The Board alleged that the annuity contract demonstrated that Tacha violated the Mental Health Practice Act by (1) maintaining a dual relationship (i.e., simultaneously being a friend and a therapist) with J.M.; (2) disclosing J.M.'s confidential information to her husband; (3) providing J.M. with her private demographic information needed to endorse her as the beneficiary of the annuity contract; (4) failing to meet the generally accepted ethical standards for social workers; and (5) exercising undue influence on J.M.

¶ 5    An ALJ held a hearing on the charges.  The Board introduced into evidence the beneficiary designation form — filled out while J.M. was still alive — that identified both Tacha and her husband as beneficiaries of J.M.'s annuity contract:

BENEFICIARY INFORMATION (Required)

Beneficiary – Receives benefit payable on death of Owner prior to Income Date if there is no surviving Joint Owner. The death benefit goes to the Owner's estate if a beneficiary is not named. Beneficiaries will share the death benefit equally, unless otherwise specified. Beneficiaries without specified percentages will share the balance of the death benefit equally. Percentages must be whole numbers, and must total 100%. If you do not elect a Beneficiary Type, the Beneficiary Type will be considered Primary.

To ensure spousal continuation, or if the spousal Guaranteed Lifetime Withdrawal Benefit (GLWB) is included, the Owner's spouse must be the Joint Owner (if a Joint Owner is named) or the Owner's spouse must be the sole primary beneficiary.

NAME (First, Middle, Last)

Lucinda Elanor Tacha

| SOCIAL SECURITY NUMBER / TIN | Check if TIN | DATE OF BIRTH (MM/DD/YYYY) | GENDER |
|---|---|---|---|
| ▉ | ☐ | ▉ | ☐ Male  ☒ Female |

| TELEPHONE NUMBER (include area code) | E-MAIL ADDRESS |
|---|---|
| ▉ | Cindytacha@msn.com |

| ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|
| P.O. Box 26 | Limon | Co. | 80828 |

| RELATIONSHIP TO OWNER | BENEFICIARY TYPE | PERCENTAGE |
|---|---|---|
| friend | ☒ Primary  ☐ Contingent | 100 % |

NAME (First, Middle, Last)

Bradley Allan Tacha

| SOCIAL SECURITY NUMBER / TIN | Check if TIN | DATE OF BIRTH (MM/DD/YYYY) | GENDER |
|---|---|---|---|
| ▉ | ☐ | ▉ | ☒ Male  ☐ Female |

| TELEPHONE NUMBER (include area code) | E-MAIL ADDRESS |
|---|---|
| ▉ | Cindytacha@msn.com |

| ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|
| PO Box 26 | Limon | Co. | 80828 |

| RELATIONSHIP TO OWNER | BENEFICIARY TYPE | PERCENTAGE |
|---|---|---|
| friend | ☐ Primary  ☒ Contingent | 100 % |

(Redactions in original.) The beneficiary designation form listed both Tacha and her husband as "friends" of J.M.

¶ 6 The Board also introduced into evidence the claim forms in which Tacha was seeking the annuity contract benefits after J.M. died. One of the pages included the following:

| CLAIMANT/BENEFICIARY (If more than one, each person must complete a separate form) | | |
|---|---|---|
| Name Lucinda Tacha | Phone ▮▮▮▮▮ | Social Security Number/TIN ▮▮▮▮ |
| Address 933 H. Avenue P.O. Box 26 | City Limon | State Co. | Zip Code 80828 |
| Date of Birth ▮▮▮▮ | Relationship to Deceased Friend | |

(Redactions in original.)  These forms listed Tacha as a "friend" of J.M. in three separate places; identified her address, phone number, social security number, and date of birth; and contained her bank information for the transfer of the funds.

¶ 7    Tacha agreed that the handwriting on both the pre- and post-death forms looked similar but maintained that she did not fill out the beneficiary designation form.  And though she admitted to filling out the claim forms in her handwriting during her deposition, Tacha testified at the hearing that she was unsure whether she was the one who filled out the claim forms and suggested that it may have been her attorney.  She did, however, concede that the signatures on the claim forms looked similar to her notarized signature on the settlement agreement between her and J.M.'s daughter.

¶ 8    The ALJ issued an initial decision containing his findings of fact, conclusions of law, and disciplinary recommendations.  He found that the handwriting on the beneficiary designation form was

the same as the handwriting on the claim forms and that Tacha had filled out the claim forms in her handwriting. Thus, the ALJ determined that Tacha "complete[d] portions of the annuity forms in her own hand, both before and after the death of J.M."

¶ 9 Because Tacha described herself as a "friend" of J.M. both before and after his death and because she filled out the beneficiary designation form, the ALJ concluded that she violated the Mental Health Practice Act both by maintaining a dual relationship with J.M. and by providing him with her private demographic information "for the purpose of facilitating the annuity designation." And because Tacha had "attempted to cover . . . up" her violations by "disavowing any memory of filling out the forms and by refusing to acknowledge her own handwriting" and her testimony demonstrated that she "could not recognize that she had done anything wrong," the ALJ recommended that Tacha's clinical social worker license be revoked.

¶ 10 Tacha appealed the ALJ's initial decision to the Board. After rejecting her exceptions to the decision, the Board adopted the ALJ's findings of fact and conclusions of law in their entirety, and it imposed the ALJ's recommended sanction of revocation.

5

## II.    Analysis

¶ 11    Tacha raises three contentions on appeal.  She contends that (1) the ALJ erred by suggesting that she should have conferred with the Board before making an oral motion to dismiss; (2) the Board abused its discretion by adopting the ALJ's findings and conclusions because they were not supported by the record; and (3) the Board abused its discretion by deciding to revoke her license.  After discussing the standard of review, we address each contention in turn.

### A.    Standard of Review

¶ 12    We review the Board's final orders under Colorado's Administrative Procedure Act.  § 12-20-408(1), C.R.S. 2024 (providing that judicial review shall be conducted in accordance with section 24-4-106(11), C.R.S. 2024).  Under the Administrative Procedure Act, we may overturn the Board's decision only if it was arbitrary or capricious, was unsupported by the record, was contrary to law, or exceeded the Board's authority.  *See* § 24-4-106(7)(b); *Lawley v. Dep't of Higher Educ.*, 36 P.3d 1239, 1247 (Colo. 2001); *see also* § 24-4-106(11)(e) (directing the

reviewing court to apply the standard of review set forth in section 24-4-106(7)).

¶ 13    The Board's decisions are presumptively valid, and the party challenging the Board's actions bears the burden of overcoming this presumption. *Lieb v. Trimble*, 183 P.3d 702, 704 (Colo. App. 2008). "We must uphold [the Board's] final decision if a consideration of the record as a whole reveals that the decision is supported by substantial evidence." *Dep't of Hum. Servs. v. State Pers. Bd.*, 2016 COA 37, ¶ 13. "All reasonable doubts as to the correctness of the [Board's] ruling must be resolved in its favor, and the administrative determination will not be disturbed absent an abuse of discretion." *Ward v. Dep't of Nat. Res.*, 216 P.3d 84, 91 (Colo. App. 2008).

## B.    Conferral

¶ 14    Tacha first asks us to disapprove of the ALJ's suggestion that she should have conferred with opposing counsel before making an oral motion to dismiss based on the Board's failure to provide an expert witness to testify about the standard of care. We reject this contention because the issue is moot. *See In re Marriage of Thomas*, 2021 COA 123, ¶ 22 (we may address mootness regardless of whether the parties have raised the issue).

¶ 15    Generally, "a court should resolve disputes on their merits." *People in Interest of C.G.*, 2015 COA 106, ¶ 12. "However, when an issue is moot, a court will ordinarily refrain from addressing it." *Id.* "An issue is moot when the relief sought, if granted, would have no practical effect on an existing controversy." *Id.* Under these circumstances, any opinion would be advisory, and we must avoid issuing advisory opinions. *Stor-N-Lock Partners # 15, LLC v. City of Thornton,* 2018 COA 65, ¶ 38.

¶ 16    We conclude that the conferral issue had no practical effect on the existing controversy because the ALJ did not deny Tacha's motion to dismiss for lack of conferral. Instead, the Board voluntarily withdrew its charge that Tacha failed to meet the generally accepted ethical standards for social workers. Thereafter, the ALJ denied the motion as to the Board's remaining charges because "none of them required opinion testimony of an endorsed expert witness to establish."[1] Thus, because the conferral issue did not affect the motion to dismiss and any decision we render on it would have no practical legal effect, the issue is moot.

---

[1] Tacha does not appeal the ALJ's ruling that the Board's remaining charges did not require expert testimony.

## C. The ALJ's Findings and Conclusions

¶ 17 Tacha next contends that the Board abused its discretion by adopting the ALJ's findings and conclusions. Specifically, she argues that (1) no evidence supports the ALJ's initial decision; (2) the ALJ erroneously dismissed her testimony as unpersuasive; and (3) the ALJ exhibited bias against her. We disagree.

¶ 18 The Board may set aside an ALJ's findings of fact only if they are contrary to the weight of the evidence. § 24-4-105(15)(b), C.R.S. 2024. And the Board "must defer to the ALJ's assessment of the credibility of the testimony and the weight to be given to the evidence." *Koinis v. Colo. Dep't of Pub. Safety*, 97 P.3d 193, 195 (Colo. App. 2003).

¶ 19 Tacha argues that the "only evidence used by the Board and the ALJ to conclude that" Tacha violated the Mental Health Practice Act "was unsupported and virtually invented in an attempt to justify the final decision." But the ALJ was presented with the annuity contract beneficiary designation form, the claim forms seeking annuity benefits, and a notarized example of Tacha's signature. Using this evidence, the ALJ found that (1) the handwriting on the beneficiary designation form and the claim forms was the same;

(2) Tacha had filled out the claim forms in her handwriting;

(3) Tacha "divulge[d] private demographic information to J.M. for the purpose of facilitating the annuity designation"; and (4) Tacha "considered herself a friend of J.M." both before and after he passed away. The record supports these findings.

¶ 20 First, the record supports the ALJ's finding that the beneficiary designation form and the claim forms had the same handwriting. During the hearing, Tacha testified multiple times that the handwriting on the beneficiary designation form and the claim forms looked similar, including the following exchange:

> [The Board's counsel:] You would say that the handwriting on this page [of the claim forms] looks like the handwriting on [the beneficiary designation form,] correct?
>
> [Tacha:] Similar, yes.
>
> [The Board's counsel:] Specifically, the handwritten "Lucinda" on both pages appear to be in the same handwriting, right?
>
> [Tacha:] Yes, they look similar.
>
> [The Board's counsel:] The N in Limon on both pages appear to be in the same handwriting, correct?
>
> [Tacha:] They look similar.

[The Board's counsel:] The "C-O-." that you wr[ote] on your claim benefit form to indicate the state of Colorado looks the same on [the beneficiary designation form,] correct?

[Tacha:] Yes, they look similar.

¶ 21     Tacha argues that the Board did not present any expert testimony on handwriting to support the finding that the handwriting was the same. But "it is not necessary that an expert testify as to the authenticity of the writing." *Lewis v. People*, 483 P.2d 949, 952 (Colo. 1971). As the trier of fact, CRE 901(3)(b) entitled the ALJ to compare the claim forms with the beneficiary designation form to determine whether they were filled out by the same person. *See United States v. Kuzmenko*, 775 Fed. Appx. 272, 275 (9th Cir. 2019) ("Federal Rule of Evidence 901(b)(3)," which is substantially identical to CRE 901(b)(3), "affords the [trier of fact] discretion to make handwriting comparisons, and draw conclusions from those comparisons, 'either in the presence or absence of expert opinion.'") (citation omitted).

¶ 22     Second, the record supports the ALJ's finding that Tacha completed the claim forms. Tacha was impeached with her deposition testimony in which she conceded that she filled out the

11

claim forms herself, and the ALJ found that her testimony at the hearing attempting to "distance herself from the entry of information on the various forms . . . was completely unpersuasive." *See Koinis*, 97 P.3d at 195. Moreover, Tacha confirmed that the notarized signature on the settlement agreement was hers, agreed that it looked similar to the signatures on the claim forms, and testified that she did not think that her attorney — whom she claimed may have been the person who filled out the claim forms — would have copied her signature. *Cf. Lewis*, 483 P.2d at 952 (an authenticated signature on a deposit card was sufficient to identify the disputed signatures on two checks).

¶ 23 Third, the record supports the ALJ's finding that Tacha provided J.M. with her private demographic information "for the purpose of facilitating the annuity designation." Given that the record supports that the handwriting on the claim forms and the beneficiary designation form was the same and that Tacha filled out the claim forms in her handwriting, it follows that the record supports that Tacha filled out the beneficiary designation form. That form included Tacha's personal email address, her mailing address, and her husband's name. It also included boxes for her

and her husband's social security numbers, dates of birth, and telephone numbers that were redacted by the annuity company, and the ALJ found it "extremely difficult to conclude that such information would have been redacted had it been left blank."

¶ 24 Fourth, the record supports the ALJ's finding that Tacha considered herself J.M.'s friend. Tacha wrote that her relationship with J.M. was as a "friend" four times on the various forms — once on the beneficiary designation form (where she also listed her husband as a "friend" to J.M.) and three more times on separate pages of the claim forms. And by signing the claim forms, Tacha "certif[ied] that all information provided on [the claim forms] is true, accurate, and complete."

¶ 25 Thus, contrary to Tacha's claim, the ALJ's findings were not contrary to the weight of the evidence, and the Board could not set them aside. *See* § 24-4-105(15)(b). And given these findings, the Board did not err by adopting the ALJ's conclusions that Tacha violated the Mental Health Practice Act by maintaining a dual relationship with J.M. and by providing him with her private demographic information "for the purpose of facilitating the annuity designation."

¶ 26    We are not persuaded otherwise by Tacha's assertion that the ALJ found her testimony "unpersuasive at times but extends that suspicion to other parts of her testimony, thereby skewing his decision based on his impression of [Tacha,] and not on the factual testimony." It is the purview of the fact finder to make credibility determinations, *Koinis*, 97 P.3d at 195, and Tacha does not explain how, nor provide any authority that would suggest, the ALJ abused his discretion by doing so here. And given that Tacha was impeached with her deposition testimony multiple times, we cannot conclude as a matter of law that the ALJ erred by finding much of her testimony not credible. *See City of Boulder Fire Dep't v. Indus. Claim Appeals Off.*, 2018 COA 93, ¶ 35 ("[W]e may not interfere with the [administrative law judge's] credibility determinations except in the extreme circumstance where the evidence credited is so overwhelmingly rebutted by hard, certain evidence that the [administrative law judge] would err as a matter of law in crediting it.") (alterations in original) (citation omitted).

¶ 27    Nor are we swayed by Tacha's assertion that the "ALJ was upset during the hearing and the [initial decision] retains the tone and demeanor of this resentment," and this "corrupted the finding

14

of facts and application of law presented in the [d]ecision and created undue bias against [Tacha.]" Tacha argues that, in his initial decision, the ALJ "note[d] several times that [Tacha] understood it would be a violation to be friends with her client or to share personal information with him," found Tacha's testimony unpersuasive, and made unsupported findings of fact. But Tacha does not explain how any of these assertions demonstrate resentment — let alone personal bias — against her, nor do we perceive any resentment or bias upon our own review of the record. *See Kilwein v. Indus. Claim Appeals Off.*, 198 P.3d 1274, 1277 (Colo. App. 2008) ("[N]othing in the record suggests bias, favoritism, impropriety, or other conduct that would overcome the presumption of integrity, honesty, and impartiality accorded the ALJ.").

### D.    The Disciplinary Sanction

¶ 28    Tacha next contends that the Board erred by choosing to revoke her license as a disciplinary sanction because (1) the ALJ "based his recommendation for revocation of [Tacha's] license rather than a lesser penalty on his arbitrary finding that '[Tacha] could not recognize that she had done anything wrong,'" and (2) the Board

imposed the sanction over six years after J.M.'s daughter submitted the complaint. We discern no abuse of discretion.

¶ 29 Section 12-245-225(1), C.R.S. 2024, grants the Board authority to issue sanctions — up to and including revocation — against a licensee who, as relevant here, has "maintained relationships with clients that are likely to impair the person's professional judgment or increase the risk of client exploitation," § 12-245-224(1)(i), C.R.S. 2024, or who has "violated or attempted to violate, directly or indirectly," the Mental Health Provider Act, § 12-245-224(1)(b).

¶ 30 In concluding that revocation was the appropriate sanction, the Board observed that Tacha had "breached the trust placed in her as a social worker to benefit financially from her inappropriate relationship with a client." It noted that her "violations relate directly to the practice of social work" because "they involve the professional boundaries . . . of her relationship with a client." Because Tacha "acknowledged in her testimony that maintaining a friendship with a client and providing personal information to a client . . . would be violations [of the Mental Health Practice Act,]" the Board concluded that her "conduct was knowing and willful."

16

And the Board "agree[d] with the ALJ that [Tacha's] testimony demonstrated a lack of responsibility or remorse for her actions." As a result, the Board "determine[d] that [Tacha's] continued practice as a social worker would pose a risk to the safety and welfare of the public, and that revocation of her license as a clinical social worker [was] the only adequate remedy to protect the public."

¶ 31    These conclusions are supported by the record. At the hearing, Tacha testified numerous times that she knew that both engaging in dual relationships and giving clients her private demographic information would violate the Mental Health Practice Act. Yet the evidence demonstrated that Tacha "maintain[ed] an improper relationship with" J.M. and "actively helped [him] fill out the application designating [her] as the beneficiary of" the annuity contract. Moreover, the ALJ found that Tacha "attempted to cover . . . up" her conduct by "disavowing any memory of filling out the forms and by refusing to acknowledge her own handwriting" and that her testimony demonstrated that she "could not recognize that she had done anything wrong."

¶ 32    Given this record, the Board's decision to revoke Tacha's license was not arbitrary or capricious and may not be disturbed on appeal.  *See* § 24-4-106(7)(b).

¶ 33    We are not convinced otherwise by Tacha's argument that the delay between when J.M.'s daughter filed her complaint and when the notice of charges was filed belies the Board's conclusion that Tacha's "continued practice as a social worker would pose a risk to the safety and welfare of the public."  While it is true that the Office of the Attorney General took nearly four years to file a notice of charges after the Board referred the disciplinary action to them, they contend that the delay was caused by "prolonged negotiations, the COVID-19 pandemic, and personnel turnover" and "does not render Tacha's violations any less grave."  In any event, Tacha has not presented any authority — nor are we aware of any — to

suggest that the Board was obligated to file the notice of charges earlier.[2]

¶ 34    The Board, with record support, determined that Tacha violated the Mental Health Provider Act by both maintaining a dual relationship with J.M. and by providing J.M. with her private demographic information to facilitate the annuity designation. As a result of these violations, the Board had the discretion to impose sanctions, including revocation, under section 12-245-225(1). We discern no basis for reversing the Board's exercise of that discretion here.

### III.    Disposition

¶ 35    The order is affirmed.

JUDGE HARRIS and JUDGE BERGER concur.

---

[2] To the extent that Tacha suggests that the Board did not comply with section 24-4-105(10), C.R.S. 2024 ("Every agency shall proceed with reasonable dispatch to conclude any matter presented to it . . . ."), or section 12-245-226(1)(a)(II)(A), C.R.S. 2024 (the Board must take action on a complaint related to maintenance of client records within two years), her argument is undeveloped and unsupported by any legal authority. Accordingly, we do not consider it. *See In re Estate of Chavez*, 2022 COA 89M, ¶ 26 ("We don't consider undeveloped and unsupported arguments." (quoting *Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n.12)).